UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| WILLIAM MENARD | CIVIL ACTION NO. 08-586 |
| VERSUS | JUDGE DOHERTY |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED** and disability benefits awarded consistent with an on onset date of February 25, 2004.

*Background and Commissioner's Findings*

William Menard was born on December 12, 1977, and was 29 years old on the date of the hearing before the Administrative Law Judge (ALJ), on November 7, 2007. (Tr. 322). Menard has a 12th grade education, and about 18 to 21 hours of college credits. (Tr 325, 326). He had past relevant work as a quality control inspector, retail salesperson, and machinist. (Tr. 253).

According to the procedural history outlined by the ALJ and the record, Menard filed applications for disability and supplemental security income benefits on March 4, 2004. (Tr. 24). In his applications, he alleged a disability onset date of February 25, 2004, due to severe depression, anxiety disorder, bipolar disorder, and alcoholism. (Tr. 78). After hearing, the ALJ denied Menard's applications in a decision issued on December 15, 2005, after finding Menard could perform his past relevant work. (Tr. 24).

2

The ALJ's decision was appealed to this Court, and on motion of the Commissioner, was reversed and remanded with instructions to the ALJ, as follows:  to proceed to the fifth step of the analysis; to obtain supplemental vocational testimony; and then, if Menard was found disabled, to conduct further proceedings to determine whether drug addiction or alcoholism were contributing factors material to the finding of disability.

The ALJ conducted another hearing on November 7, 2007, and again found Menard not disabled at any time from the alleged date of onset through the date of decision.  (Tr. 255).  This appeal followed.

In the sequential analysis, after finding Menard had not engaged in substantial gainful activity since February 25, 2004, the ALJ found at the second step that Menard had severe impairments of bipolar disorder and history of substance abuse.  (Tr. 248).  At the third step, the ALJ found Menard's impairments did not meet or equal in severity any listed impairment. (Tr. 249).   The ALJ assigned a residual functional capacity to Menard as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is able to understand, remember and carry out one, two and three-step instructions and perform tasks requiring no more than limited interaction with the general public. (Tr. 250).

At the fourth step, the ALJ found Menard was unable to perform his past relevant work as a quality control inspector, retail salesperson and machinist.  (Tr. 253).

At the fifth step, with the aid of vocational expert (VE) testimony, the ALJ found Menard could perform the representative occupations of assembler, weigher/checker, and hand packager. The ALJ then found Menard not disabled.  (Tr. 255).

3

### *Assignment of Errors*

Menard raises the following errors on appeal:

I. The ALJ committed an error of law in failing to accord proper weight to the opinions of the treating psychiatrist and examining psychologist;

II. The ALJ's residual functional capacity was not supported by substantial evidence; and,

III. The VE's testimony was based on a defective hypothetical.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir.1991) (summarizing 20 C.F.R. §404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step

5

review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

### *Argument and Discussion*

I.  Weight Given by the ALJ to the Opinion of Menard's Treating Psychiatrist and Examining Psychologist

Menard raises as error the ALJ's failure to give controlling weight to the opinions of Dr. Winston, Menard's treating psychiatrist, and F.T. Friedberg, Ph.D., Menard's examining psychologist, regarding Menard's functional limitations.  Menard argues the ALJ improperly rejected their opinions without good cause, as same is defined in the Fifth Circuit, and without going through the detailed analysis required by 20 C.F.R. § 404.1527(d)(2).  Instead, Menard argues, the ALJ simply substituted his own opinion for Freidberg and Dr. Winston's.

In his Mental Functional Capacity Assessment, issued on November 20, 2007, Dr. Winston opined, *inter alia*, that Menard's psychological impairment would, more than 50% of the work week, limit his abilities to: maintain a consistent pace without an unreasonable number and length of rest periods; understand and remember detailed instructions; maintain attention and concentration for 2 hour blocks of time; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others; make work related decisions; and, respond appropriately to changes in a work setting. (Tr. 313, 314).  Dr. Winston further stated as follows:

> I have been following the patient for over three years.  During this time his bipolar mood swings have not been well-controlled despite trials of many different medications.  *When he is stable he functions well, but when he decompensates he reaches a point of barely functioning.*  (Tr. 314) (Emphasis added).

6

On November 27, 2007, F.T. Friedberg, Ph.D., a psychologist, issued a Psychological Report after examining Menard, administering several psychological tests, and reviewing his medical records. In his report, Friedberg stated "His work history has indicated he has only been able to hold "part time" work because of his major work difficulties.  He has been in and out of college for a number of years but has never achieved a degree." (Tr. 316).  After reviewing Menard's history and test results, Dr. Friedberg stated as follows:

> In summary, Mr. Menard appears to have a Bipolar I Disorder, chronic and severe, with psychosis. . .These symptoms have caused clinically significant distress and impairment in social, occupational and interpersonal functioning.  The diagnosis does appear to be severe and chronic.  The GAF (Global Assessment of Function) on examination today would be seen at approximately 50.  However, his history would indicate from hospital records and from his symptomatology to be as low as 20.  This would appear to occur at least 6 months out of the year, which has rendered him unable to function in a normal life setting for any extended period of time.  The fact that he cannot tolerate or respond affectively to the normal medical treatments for this debilitating disorder and *the fact that he cannot sustain functioning over any extended period of time* would suggest that he is totally and permanently disabled from viable vocational endeavors.  (Tr. 317)(Emphasis added).

In his decision, the ALJ discounted Dr. Winston's opinion regarding Menard's limitations, finding "the claimant's actual functioning and other medical records suggest that the claimant may be capable of higher functioning than reported by Dr. Winston in November 2007." (Tr. 251).  The ALJ found "claimant's schedule of treatment is not that which would be expected of a gravely disabled individual. . . he kept eleven appointments in 2006 and three in 2007 (through August). . . and "he has required no inpatient treatment since May 2002, almost two years prior to his alleged onset date." (Tr. 252).

In discounting Friedberg's opinion regarding Menard's inability to sustain function, the ALJ found his was not a psychological opinion, but a vocational opinion, which Friedberg was

not qualified to give. The ALJ also found Friedberg's opinion was "not supported the evidence, as this claimant has not attempted the performance of non-complex work activity within the residual functional capacity determined herein." (Tr. 252).

The general rule is that the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. See <u>Newton v. Apfel</u>, 209 F.3d 448, 454 (5th Cir. 2000), referencing <u>Leggett v. Chater</u>, 67 F.3d 558, 566 (5th Cir.1995); <u>Greenspan v. Shalala</u>, 38 F.3d 232, 237 (5th Cir.1994). Furthermore, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with . . . other substantial evidence*.'" <u>Newton</u>, 209 F.3d at 455, citing <u>Martinez v. Chater</u>, 64 F.3d 172, 176 (citing 20 C.F.R. § 404.1527(d)(2))(Emphasis added). The court in <u>Newton</u> further clarified that "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist,* an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."(Emphasis added).

The ALJ does not point to any medical records by any treating or examining physician in contradiction to Friedberg or Dr. Winston's opinions, except to mention the opinion of Cathy Castille, Ph.D., a state agency psychological consultant, which issued on May 18, 2004. Her opinion, as cited by the ALJ, was that "claimant was able to perform simple tasks in a socially isolative environment." (Tr. 253). However, even if this state agency consultant's opinion were contradictory, which is questionable, it is an opinion by a non-examining, non-treating

8

consultant. Therefore, there was no controverting evidence by an examining or treating physician in the record, and the ALJ was required to perform a detailed analysis of Friedberg and Dr. Winston's opinions, as Menard's treating psychiatrist and examining psychologist, by examining the factors of 20 C.F.R. § 404.1527(d)(2), before rejecting those opinions.

20 C.F.R. § 404.1527(d)(2) reads in pertinent part as follows:

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

>(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
>
>(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

The ALJ did not examine any of these factors before rejecting Friedberg and Dr. Winston's opinions regarding Menard's decompensation and ability to sustain function. Instead, the ALJ opined, without any medical support for same, that eleven visits to Dr. Winston in 2006, with no missed appointments, and three visits in 2007 up until August, was not a "schedule of treatment. . . . which would be expected of a gravely disabled individual." (Tr. 252). The ALJ argues this schedule of treatment discounts claimant's allegations of agoraphobia. However, it is not clear why the ALJ focused on "agoraphobia," as Menard's alleged and found impairment was bipolar disorder, not agoraphobia. Moreover, it is unclear what "schedule of treatment" the ALJ would have found appropriate. Furthermore, the ALJ focuses on Menard lack of hospitalization since 2002, as evidence contradicting Dr. Winston's opinion that Menard decompensates. However, the court has not been made aware of any requirement that a claimant suffer frequent hospitalizations in order to support a finding of periodic decompensation and inability to sustain function.

In discounting Freidberg's opinion, the ALJ threw out his entire opinion regarding Menard's ability to sustain function because Freidberg concluded with the phrase ". . .would

10

*suggest* that he is totally and permanently disabled from viable vocational endeavors." (Tr. 252)(Emphasis added).  The Commissioner is not bound by a treating physician's conclusion that the claimant is disabled, as the question of whether an individual is disabled for purposes of the Social Security Act is a matter than can be determined only by the Commissioner.  Carry v. Heckler, 750 F.2d 479, 484 n. 13 (5th Cir. 1985).  Therefore, the ALJ was correct in disregarding Freidberg's "suggestion."  However, the ALJ is not free to disregard the entirety of Friedberg's opinions preceding this statement, in particular, Friedberg's opinions that Menard suffers from decompensation "at least 6 months out of the year, which has rendered him unable to function in a normal life setting for any extended period of time. . .he cannot tolerate or respond affectively to the normal medical treatments for this debilitating disorder . . . [and] he cannot sustain functioning over any extended period of time. . . .  (Tr. 317).

A discussion of the 20 C.F.R. § 404.1527(d)(2) factors would have revealed no basis to discount either of these specialists' opinions.  Dr. Winston has been Menard's treating psychiatrist since April, 2004.  (Tr. 289).  Menard was referred to Dr. Winston by Friedberg.  (Tr. 292).  As cited by the ALJ, Menard's visits to Dr. Winston have been consistent.  Dr. Winston is a medical doctor, a psychiatrist, and he documented Menard's visits with treatment notes which indicate several different medications were tried, with varying results.  Dr. Winston's diagnoses and opinions are supported by and consistent with the other medical records in evidence. Menard was hospitalized twice in 2002 for a suicide attempt and suicidal ideation, two years prior to his application for disability benefits.  (Tr. 137).  The record shows Menard consistently

11

sought mental health treatment, and tried several medications, but was unable to maintain stability and functionality for any significant period of time.[1]

Likewise, Friedberg issued his Psychological Report after a clinical interview with Menard, and he administered the MMPI 2, the Beck Depression Inventory, the State Trait Anxiety Inventory, Reitan Trail Making Test, and the Controlled Oral Word Association Test. (Tr. 315).  He reviewed the records not only of Dr. Winston prior to making his report, but also the records of Dr. Catherine McDonald, the Hazleden Clinic, Paul LeBlanc, LCSW, and records from Vermilion Hospital.  Friedberg also noted he reviewed his "previous records of examining Mr. Menard in February of 2002." (Tr. 315).[2]  Thus, the report of Friedberg is very through, and his opinions are well-supported by objective testing and personal examination and evaluation, and are consistent with the rest of the medical evidence.[3]

However, the ALJ did not discuss *any* of the factors of 20 C.F.R. § 404.1527(d)(2). Instead of completing the required analysis, which would have shown no bases for rejecting Friedberg and Dr. Winston's opinions, the ALJ came up with his own theory that Menard could not sustain complex employment, but he could sustain simple, non-complex employment, which he found Menard had never attempted.  The ALJ found and opined as follows:

---

[1] Dr. Edgar Concepcion, 8/2/00 to 5/9/01 (Tr. 118-128); Center for Psychiatric and Addictive Medicine, 2/20/02 to 6/10/02 (Tr. 129-136); Vermilion Hospital, 5/4/02 - 5/9/02 (Tr. 137 - 154); Dr. Catherine McDonald (Tr. 5/9/02 - 8/7/03); Paul E. LeBlanc, L.C.S.W., 5/7/03 (Tr. 162 - 162); David A. Legendre, Ph.D., 5/21/03 - 6/2/03 (Tr. 163 - 168).

[2] These records are not in the administrative record.  Neither are the records from the Hazleden Clinic, but Friedman states in his report he was discharged from Hazleden, "where he was treated for substance abuse and again diagnosed with Bipolar Disorder." (Tr. 316).

[3] See FN 1.

12

> This claimant has a history of committing to complex work or difficult school schedules when he is stable and then becoming unable to complete those tasks when his mental condition deteriorates to a degree. . . This claimant has asserted that he is disabled based on a pattern of not sustaining skilled work activity as a quality control inspector of valves and a machinist. . . The undersigned accepts the claimant's testimony that he has not been able to sustain anything that he has attempted thus far, but the claimant has yet to attempt the simpler work which would not tend to bring the levels of stress he has experienced in past jobs or school schedules.. . .The type of functioning the claimant has attempted to sustain, however, is of a more complex nature than is indicated by the residual functional capacity determined herein." (Tr. 252).

Not only is this opinion by the ALJ contradictory to the uncontroverted medical opinions of Dr. Winston and Friedberg, and its issuance without the required analysis of the factors of 20 C.F.R. § 404.1527(d)(2), it is simply not supported by the factual evidence in the record.

Menard's employment records show from 1993 through 2003, he worked at many jobs, and has not only failed at sustaining "skilled work activity as a quality control inspector of valves and a machinist." The records show Menard worked for periods of time at Helos Grocery Store, Target, Children's Museum of Acadiana, Structure, Inc., Lone Star Steakhouse & Saloon, Domino's Pizza, World of Science, Community Coffee, Gator Valve, Natural Wonders, KB Toys, B. Dalton Booksellers, and Finished Machine Products, Inc.  (Tr. 66-70).  Thus, the ALJ's finding that Menard had only tried "skilled work activity as a quality control inspector of valves and a machinist" is not accurate.  Furthermore, the ALJ found Menard was "capable of higher functioning than reported by Dr. Winston" because, in part, he was attending school.  The ALJ stated as follows:

> First, the claimant testified at the hearing on November 7, 2007 that he was attending school, though he was not sure he would be able to keep the major in civil engineering, as he found the subject matter difficult.  Despite this difficulty, he maintains the capacity to use a computer, shop for antiques, read and study old math textbooks.  He lives alone and cares for his own needs.  He has friends and

13

has had numerous girlfriends over the years.  The claimant's primary complaint is that his symptoms are worse in the fall and the spring. (Tr. 251).

The court notes at the time of the hearing, Menard had completed only eighteen to twenty-one credit hours, was 29 years old, and still had no college degree. (Tr. 324, 325).  He took one course at University of Louisiana at Lafayette in Spring of 2006.  (Tr. 325).  While not entirely clear, Menard testified he passed two of four courses initially taken, received incompletes in three courses, and failed another course.  (Tr. 326).  He became depressed in the Spring, and missed a month and half out of school give or take a little bit." (Tr. 329).  In other words, the ALJ's rendition of Menard as a normal college student pursuing a course in engineering, dating, and socializing is not supported by the record.

Thus, for all the reasons given above, the undersigned finds the ALJ committed legal error when he failed to give controlling weight to the opinions of Friedberg and Dr. Winston regarding the nature and severity of Menard's impairments, particularly Menard's periods of decompensation and inability to sustain function.

II.   Discussion of the ALJ's Residual Functional Capacity Assessment and Vocational Expert Testimony.

The legal error by the ALJ in not according controlling weight to the opinions of Friedberg and Dr. Winston was not harmless, as it resulted in a residual functional capacity that was not supported by substantial evidence.  Both Dr. Winston and Friedberg opined that Menard would not be able to sustain employment on a regular basis, due to his periodic episodes of decompensation.

The vocational expert at the hearing testified, after questioning by the ALJ, as follows:

14

Q.  If Mr. Menard had the kind of problems he testified to today, if about six months, once every six months he couldn't work for up to six weeks because of a seasonal adjustment disorder, could he hold onto these jobs?

A.  No, sir.
(Tr. 352).

Thus, if the ALJ's residual functional capacity had properly incorporated the opinions of Friedberg and Dr. Winston, the testimony of the vocational expert would have required a finding of disability at the fifth step.

Since the ALJ did not find Menard disabled, he did not reach the issue of whether drug addiction or alcoholism were contributing factors material to the finding of disability, as instructed.  However, as discussed above, the ALJ should have found the claimant disabled.

Section 105 of the Contract with America Advancement Act of 1996, Pub.L. No. 104-121, 110 Stat. 847, 852-55 (1996), amended pertinent portions of the Social Security Act to prohibit the award of disability insurance benefits and supplemental security income benefits to individuals disabled by alcoholism or drug addiction.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J), *cited in* Austin v. Massanari, 162 F.Supp.2d 517, 526-27 (W.D.La. 2001).  Under the amended regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is *whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol*.  20 C.F.R. §416.935(b)(1)(Emphasis added).  The Fifth Circuit has expressly held the claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his or her disability.  Brown v. Apfel, 192 F.3d 492, 498-499 (5th Cir. 1999).

15

While there is some evidence in the record that Menard has used drugs and alcohol through the years, the use appears to be episodic.  For example, in the ALJ's first opinion, the ALJ noted Menard testified he last used cocaine in June 2005 and smoked marijuana in September 2005, during Hurricane Rita.  (Tr. 27).  On July 1, 2005, he reported started drinking after breaking up with a girlfriend.  (Tr. 27).  Claimant testified at the hearing on November 7, 2007, that he had been sober since November, 2006, after receiving an OWI.  (Tr. 343, 344).  However, he testified that he still, while sober, suffered with depressive symptoms and missed class both in Fall, 2007, and Spring, 2006 semesters.  (Tr. 344).

In addition to the testimonial evidence, Dr. Winston specifically stated in his Mental Functional Capacity Assessment that Menard's limitations were caused primarily by his psychological impairment, and not his substance abuse, as "the patient's mood disorder manifested several years prior to his first use of alcohol."  (Tr. 314).

Thus, the undersigned finds there is substantial evidence in the record to support a finding that claimant's drug or alcohol use is not a contributing material factor in his disability.

### *Conclusion and Recommendation*

The ALJ committed legal error by discrediting and failing to give sufficient weight to Menard's treating psychiatrist and examining psychologist's opinions regarding the nature and severity of Menard's impairments.  The error was not harmless, as it resulted in a residual functional capacity that was not supported by substantial evidence, as it did not include the treating psychiatrist and examining psychologist's opinions regarding Menard periodic decompensation and inability to sustain function.  Vocational expert testimony established that if the residual functional capacity would have included Menard's periodic decompensation, there

16

were no jobs Menard could perform that existed in significant numbers in the national economy. Thus, a finding of disability was required at the fifth step.  Furthermore, substantial evidence of record supports a finding that Menard's drug or alcohol use is not a contributing material factor in his disability.

For the reasons given above,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and the Commissioner be ordered to award benefits consistent with an onset date of February 25, 2004.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on November 5, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)